**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Michael Hedlund, | No. CV-19-05751-PHX-DLR |
| Petitioner, | **ORDER** |
| v. | <u>DEATH PENALTY CASE</u> |
| David Shinn, et al., | |
| Respondents. | |

Petitioner Charles Hedlund has filed a second-in-time Petition for Writ of Habeas Corpus. (Doc. 1.) The Court ordered Respondents to file a response to Hedlund's argument that the petition was not a second or successive petition requiring authorization from the Ninth Circuit under 28 U.S.C. § 2244(b)(3)(A). Respondents filed a response to which Hedlund filed a reply. (Docs. 14, 17.)

Also before the Court is Hedlund's Motion for Stay and Abeyance. (Doc. 18.) Hedlund asks the Court to stay his pending federal habeas corpus case and hold it in abeyance while he exhausts a federal constitutional claim in state court postconviction relief (PCR) proceedings. (*Id.*) Respondents oppose the motion. (Doc. 19.)

**I.    Background**

On November 12, 1992, a jury found Hedlund guilty of one count of first-degree murder and one count of second-degree murder. *State v. McKinney*, 185 Ariz. 567, 571, 917 P.2d 1214, 1218 (1996). The court sentenced him to death on the first-degree murder

conviction. *Id*. The death sentence was supported by a single aggravating factor: pecuniary gain. *Id.* at 584, 917 P.2d at 1231. In a consolidated opinion with his codefendant, James McKinney, the Arizona Supreme Court affirmed both Hedlund's and McKinney's convictions. *Id*. at 587, 917 P.2d at 1234. Upon independent review, the court also affirmed the death sentences. *Id*.

Hedlund filed a petition for writ of habeas corpus in this Court in 2003. *Hedlund v. Ryan*, No. CV-02-0110-PHX-DGC (D. Ariz.), *see* Doc. 71. This Court denied the petition but granted a certificate of appealability (COA) on three claims. *Id.*, Doc. 147. The Ninth Circuit Court of Appeals expanded the COA to include three additional claims. *Hedlund v. Ryan*, 854 F.3d 557, 565 (9th Cir. 2017). The Ninth Circuit reversed this Court, finding that the Arizona Supreme Court had violated the Eighth Amendment in its independent review of the death sentence by applying a causal nexus test to Hedlund's non-statutory mitigation evidence. *Id.* at 587.

The Ninth Circuit remanded the petition to the Court with instructions to grant the writ unless the state corrected the constitutional error. *Id.* at 587–88. The Ninth Circuit had previously reached the same conclusion in *McKinney v. Ryan*, 813 F.3d 798, 804, 823–24 (9th Cir. 2015), remanding McKinney's case to this Court with the same instructions. After this Court granted the conditional writs, the State filed motions in each case asking the Arizona Supreme Court to conduct a new independent review of the death sentences. The court granted the requests. *State v. McKinney*, 245 Ariz. 225, 226, 426 P.3d 1204, 1205 (2018); *State v. Hedlund*, 245 Ariz. 467, 470, 431 P.3d 181, 184 (2018). In 2018, the Arizona Supreme Court performed its independent reviews and affirmed both death sentences. *McKinney*, 245 Ariz. at 229, 426 P.3d at 1208; *Hedlund*, 245 Ariz. at 477, 431 P.3d at 191.

McKinney filed a petition for writ of certiorari challenging the Arizona Supreme Court's reweighing of the aggravating and mitigating circumstances in its 2018 independent review, arguing that he was entitled to a jury resentencing under *Ring*.[1]

---

[1] *Ring v. Arizona*, 536 U.S. 584 (2002).

*McKinney v. Arizona*, 140 S. Ct. 702, 706 (2020). The Supreme Court upheld the Arizona Supreme Court's independent review. *Id.* The Court rejected McKinney's argument that the Arizona Supreme Court's reweighing of aggravating and mitigating circumstances "constituted a reopening of *direct* review." *Id.* at 708. Instead, the Court found that the reweighing took place on collateral review. *Id.* The Court held "that state appellate courts may conduct a *Clemons* reweighing of aggravating and mitigating circumstances, and may do so in collateral proceedings as appropriate and provided under state law."[2] *Id.* at 709.

Hedlund had also petitioned for certiorari to the Supreme Court raising the same issues. Certiorari was denied on March 2, 2020, after the *McKinney* opinion was announced. *Hedlund v. Arizona*, 140 S. Ct. 1270 (Mar. 2, 2020).

Hedlund filed the pending second-in-time habeas petition on December 5, 2019, while McKinney's case was pending in the Supreme Court. (Doc. 1.) The petition raises the following claims: (1) the Arizona Supreme Court violated Hedlund's rights when it reinstated his death sentence rather than allowing him a sentencing hearing before a jury; (2) the Arizona Supreme Court applied an unconstitutional causal nexus requirement to Hedlund's mitigation evidence; (3) the Arizona Supreme Court refused to consider mitigating evidence developed since Hedlund's initial sentencing; (4) Hedlund's sentence is unconstitutional because he is not among the "worst of the worst offenders" warranting the death penalty and Arizona's death penalty scheme does not adequately narrow the class of offenders eligible for death[3]; (5) Hedlund's death sentence is unconstitutional because the Arizona Supreme Court required him to prove the mitigating circumstances by a preponderance of the evidence and to prove that those circumstances outweighed the aggravating factor; (6) executing Hedlund more than 26 years after he was sentenced to death violates the Eighth and Fourteenth Amendments; and (7) Hedlund's death sentence

---

[2] *Clemons v. Mississippi*, 494 U.S. 738 (1990), held that when an aggravating factor has been found invalid, a state appellate court may independently reweigh the aggravating and mitigating circumstances found by the jury.

[3] As discussed below, Claim 4 also includes a subclaim alleging that Hedlund's death sentence is unconstitutional based on the partial legislative repeal of the pecuniary gain aggravating factor. It is that allegation which is the basis for Hedlund's motion for a stay.

must be vacated because of the cumulative prejudicial effect of the errors committed by the Arizona Supreme Court.

## II.   Analysis

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposed significant burdens on petitioners who try to raise new claims in a "second or successive" habeas petition. *See Burton v. Stewart*, 549 U.S. 147, 152–53 (2007) (per curiam). First, a district court must dismiss any claim presented in a second or successive habeas petition that was presented in a prior petition. 28 U.S.C. § 2244(b)(1). Second, a new claim not raised in a prior petition also must be dismissed unless (1) the claim rests on a new, retroactive rule of constitutional law, or (2) the factual basis of the claim was not previously discoverable through due diligence and the new facts establish by clear and convincing evidence that no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2244(b)(2). Even in the latter circumstance, leave of the court of appeals is required before the successive petition may be pursued in a district court. 28 U.S.C. § 2244(b)(3)(A). These requirements are jurisdictional and cannot be waived. *Burton*, 549 U.S. at 157.

The instant petition is a "second-in-time" petition, challenging the same conviction for which Hedlund previously sought federal habeas relief. Hedlund has neither requested nor obtained permission from the Ninth Circuit to file a second or successive petition. However, this does not end the inquiry.

In *Magwood v. Patterson*, 561 U.S. 320 (2010), the Court held that a second-in-time petition challenging a judgment imposed after resentencing was not "second or successive" under § 2244(b)(2), where the first petition was filed prior to resentencing and challenged the original judgment. Thus, where there is a "new judgment intervening between the two habeas petitions," the latter petition challenging the new judgment is not second or successive. *Id.* at 341 (quoting *Burton*, 549 U.S. at 156).

Hedlund argues that under *Magwood* the Arizona Supreme Court's 2018 independent review of his sentence constitutes an intervening judgment and a new

sentence. (Doc. 1 at 3; *see* Doc. 17 at 5.) He misapprehends the nature of the relief provided during his first habeas proceeding.

The Ninth Circuit remanded Hedlund's case to the district court for entry of a conditional writ on the grounds that the Arizona Supreme Court had failed to consider all of Hedlund's proffered mitigation evidence when it conducted its independent review of his death sentence. *Hedlund*, 854 F.3d at 587. The district court granted a conditional writ, stating that a writ of habeas corpus would be granted "unless the State of Arizona, within 120 days from the entry of this Judgment, initiates proceedings either to correct the constitutional error in Hedlund's death sentence or to vacate the sentence and impose a lesser sentence consistent with the law." *Hedlund*, No. CV-02-0110-PHX-DGC (D. Ariz.), Doc. 158. The district court did not order that Hedlund be released from his death sentence or direct that he receive a new sentencing hearing. Hedlund's sentence was never vacated. *See Burton*, 549 U.S. at 156 ("[J]udgment in a criminal case means sentence. The sentence is the judgment."); *see also Styers v. Ryan*, No. CV-12-2332-PHX-JAT, 2013 WL 1775981, at *3 (D. Ariz. Apr. 25, 2013).

In response to the conditional writ, the Arizona Supreme Court conducted a new independent sentencing review and reaffirmed the trial court's original capital sentence. Consequently, although further state proceedings have been undertaken by the Arizona Supreme Court in Hedlund's case, the judgment of conviction and sentence at issue in the instant petition is the same judgment entered by the trial court and challenged by Hedlund in his first habeas petition. Because there is no intervening judgment, *Magwood* is inapposite. *Cf. Wentzell v. Neven*, 674 F.3d 1124, 1128 (9th Cir. 2012) (holding that second-in-time petition filed after entry of an amended judgment is not "second or successive," even if challenging unaltered component of original judgment, because "it challenges a new, intervening judgment").

This finding, however, does not preclude further consideration of whether any of Hedlund's claims are exempt from the gatekeeping requirements of 28 U.S.C. § 2244(b).

The Supreme Court "has declined to interpret 'second or successive' as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application." *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007). In *Panetti*, for example, the Court held that competency-to-be-executed claims are exempt from AEDPA's limitation on second or successive petitions because such claims generally are not ripe until after the time has run to file a first habeas petition. *Id.* at 947; *see also Slack v. McDaniel*, 529 U.S. 473, 478 (2000) (declining to apply § 2244(b) to a second petition where the first was dismissed for lack of exhaustion).

The Ninth Circuit has acknowledged that the reasoning of *Panetti* is not limited to competency-for-execution claims. In *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011), the court observed that "[p]risoners may file second-in-time petitions based on events that do not occur until a first petition is concluded" if the claims raised therein "were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding." In *United States v. Lopez*, 577 F.3d 1053, 1064 (9th Cir. 2009), the court held that the factors identified by the Supreme Court in *Panetti* "must be considered in deciding whether other types of claims that do not survive a literal reading of AEDPA's gatekeeping requirements may nonetheless be addressed on the merits." These considerations are "(1) the implications for habeas practice of reading 'second or successive' literally for such claims, (2) whether barring such claims would advance the policies behind AEDPA's passage and (3) the Court's pre- and post-AEDPA habeas jurisprudence, including the common law abuse-of-the-writ doctrine." *Id.* at 1056 (citing *Panetti*, 551 U.S. at 943–46). "The [*Panetti*] Court cautioned against interpreting AEDPA's 'second or successive' undertaken provisions in a way that would foreclose any federal review of a constitutional claim, or otherwise lead to perverse results, absent a clear indication that Congress intended that result." *Id.* at 1063.

In light of these principles, the Court considers whether any of Hedlund's claims are exempt from AEDPA's limitations on second or successive petitions. In doing so, the

Court examines the specific claims presented in the later petition and compares those claims to the claims presented in the original petition. *See, e.g., Pace v. Diguglielmo*, 544 U.S. 408, 416 (2005) (observing that the requirements of § 2244(b)(2) do not apply to a petition as a whole but require inquiry into specific claims). Having undertaken that review, the Court finds that the instant petition includes a claim that was ruled on by the United States Supreme Court in *McKinney* (Claim 1); claims that were raised in Hedlund's first habeas petition (Claims 4, in part, and 6) and therefore are second or successive; and claims that were not ripe at the time Hedlund filed his first petition (Claims 2, 3, 5, and 7).

### A. Claim ruled on in *McKinney*

Claim 1 challenges the Arizona Supreme Court's 2018 independent review and denial of a jury resentencing. (Doc. 1 at 36.) This argument was rejected in *McKinney*, 140 S. Ct. at 708–09. The claim is therefore meritless and will be denied.

### B. Claims Previously Raised

A claim "is successive if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments . . . [or] proved by different factual allegations." *Babbitt v. Woodford*, 177 F.3d 744, 746 (9th Cir. 1999) (internal quotation marks omitted); *see Gulbrandson v. Ryan*, 738 F.3d 976, 997 (9th Cir. 2013); *see also Pizzuto v. Blades*, 673 F.3d 1003, 1008 (9th Cir. 2012) (explaining that "federal courts will not consider new factual grounds in support of the same legal claim that was previously presented").

In Claim 4 of his second-in-time petition, Hedlund alleges in part that his death sentence violates the Eighth and Fourteenth Amendments because he is not among the "worst of the worst offenders" warranting the death penalty and because Arizona's death penalty scheme does not adequately narrow the class of offenders eligible for death. (Doc. 1 at 70–71.) He also argues that the sole aggravating factor—pecuniary gain—"is not especially weighty." (*Id.* at 72.) In Claim 16 of his first habeas petition, Hedlund argued that the pecuniary gain factor had not been proved. *Hedlund*, No. CV-02-0110-PHX-DGC (D. Ariz.), Doc. 71 at 144–48. In Claim 20 of that petition, Hedlund alleged that Arizona's

death penalty statute does not adequately channel the sentencer's discretion. *Id.*, Doc. 71 at 154. To the extent it alleges that Arizona's death penalty statute does not adequately narrow the class of offenders eligible for death, Claim 4 is second or successive.

In Claim 6 of his second-in-time petition, Hedlund alleges that executing him after 26 years in custody would violate the constitution. (Doc. 1 at 87.) Hedlund raised a "*Lackey*" argument in Claim 25 of his first petition.[4] *Hedlund*, No. CV-02-0110-PHX-DGC (D. Ariz.), Doc. 71 at 178. Claim 6 is therefore second or successive. *Babbitt*, 177 F.3d at 746.

Pursuant to 28 U.S.C. § 2244(b)(1), Claims 4 and 6 must be dismissed. *See Gonzalez v. Crosby*, 545 U.S. 524, 529–30 (2005) ("[A]ny claim that has already been adjudicated in a previous petition must be dismissed."); *West v. Ryan*, 652 F.3d 1071, 1077 (9th Cir. 2011).

**C.     Claims Not Previously Raised**

Hedlund raises claims arising from events that occurred after the issuance of the conditional writ. He alleges that the Arizona Supreme Court applied an unconstitutional causal nexus requirement to his mitigation evidence (Claim 2); that the Arizona Supreme Court refused to consider mitigating evidence developed since his initial sentencing (Claim 3); that his death sentence is unconstitutional because the Arizona Supreme Court required him to prove the mitigating circumstances by a preponderance of the evidence and prove that those circumstances outweighed the aggravating factor (Claim 5); and that the cumulative effect of all the errors committed by the Arizona Supreme Court warrants vacating his death sentence. (Claim 7). (Doc. 1 at 52, 64, 82, 90.)

None of these claims could have been raised in Hedlund's first habeas petition. The factual predicate for the claims did not arise until after the Arizona Supreme Court conducted a new independent sentencing review in response to the district court's issuance

---

[4] The claim is also meritless, as the United States Supreme Court has never held that lengthy incarceration prior to execution amounts to cruel and unusual punishment. *See Lackey v. Texas*, 514 U.S. 1045 (1995) (mem.) (Stevens, J. & Breyer, J., discussing denial of certiorari and noting the claim has not been addressed).

of a conditional writ in the first habeas proceeding.

Circuit courts have allowed prisoner to file second petitions "relating to denial of parole, revocation of a suspended sentence, and the like because such claims were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding." *Buenrostro*, 638 F.3d at 725; *see also Hill v. Alaska*, 297 F.3d 895, 898 (9th Cir. 2002) (declining to find petition successive "if the prisoner did not have an opportunity to challenge the state's conduct in a prior petition"); *Walker v. Roth*, 133 F.3d 454, 455 (7th Cir. 1997) (per curiam) ("None of these new claims were raised in his first petition, nor could they have been; [the petitioner] is attempting to challenge the constitutionality of a proceeding which obviously occurred after he filed, and obtained relief, in his first habeas petition."). Because Claims 2, 3, 5, and 7 could not have been included in Hedlund's first petition, they are not second or successive and he "is not obliged to secure [the Ninth Circuit's] permission prior to filing his habeas petition in the district court." *Hill*, 297 F.3d at 899; *see also Styers*, No. CV-12-2332-PHX-JAT, 2013 WL 1775981, at *5.

### III.   Motion for stay and abeyance

Hedlund's death sentence was supported by a single aggravating factor, pecuniary gain, which at the time of his trial provided that an aggravating factor existed where the murder was committed "as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value." A.R.S. § 13-703(F)(5).[5] On August 27, 2019, the Arizona Legislature partially repealed the pecuniary gain factor, limiting it to murder-for-hire circumstances. *See* A.R.S. § 13-751(F)(3) ("The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value, or the defendant committed the offense as a result of payment, or a promise of payment, of anything of pecuniary value."). Hedlund's offense does not satisfy the new version of the pecuniary gain factor.

Hedlund filed his second-in-time habeas petition on December 5, 2019. (Doc. 1.) In

---

[5] At the time of Hedlund's offense, Arizona's capital sentencing scheme was set forth in A.R.S. §§ 13-703 and 13-703.01 to -703.04. It is presently set forth in A.R.S. §§ 13-751 to -759.

Claim 4 of the petition he alleges, among other arguments, that the partial repeal of the pecuniary gain aggravating factor rendered his death sentence a violation of the Eighth Amendment.[6] (Doc. 1 at 72–73.) On May 12, 2020, he filed a Notice of Successive Petition for Post-Conviction Relief with the Maricopa County Superior Court seeking relief under Rule 32.1(a), (c), (g), and (h) of the Arizona Rules of Criminal Procedure. (Doc. 18, Ex. A.) Hedlund's successive PCR petition is based exclusively on the partial repeal of the pecuniary gain aggravating factor. He asks the Court to stay his federal habeas case while he exhausts the legislative-repeal claim in state court. (Doc. 18.) He makes his request for a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005).

A federal court may not "adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines*, 544 U.S. at 273 (citing *Rose v. Lundy*, 455 U.S. 509, 518–519 (1982)). In *Rhines*, however, the Supreme Court held that "a federal district court has discretion to stay [a] mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition." 544 at 271–72. This

---

[6] Although Hedlund argues that the Arizona Supreme Court "impliedly ruled on the merits of this claim" (Doc. 1 at 71), he also signals his intention to seek a stay so he can "return to the Arizona state court to exhaust this claim" (*id.* at 72, n.27). The Court finds the claim unexhausted. To properly exhaust state remedies, the petitioner must "fairly present" his claims to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim is "fairly presented" if the petitioner has described the operative facts and the federal legal theory on which the claim is based. *Anderson v. Harless*, 459 U.S. 4, 6 (1982). If a petitioner's habeas claim includes new factual allegations not presented to the state court, the claim may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). New evidence fundamentally alters a claim if it places the claim in a significantly altered and stronger evidentiary posture than it had in state court. *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir. 2014).
   In the Arizona Supreme Court, Hedlund asserted that sentencing him to death would violate the Eighth and Fourteenth Amendments because he did not fit into the narrow class of offenders warranting death. Hedlund's new factual allegation—that the sole aggravating factor in his case has been repealed—has fundamentally altered this claim by placing it in a significantly altered and stronger evidentiary posture. *Dickens*, 740 F.3d at 1318. The claim is therefore unexhausted.

discretion is to be exercised under "limited circumstances," *id.* at 277, because "routinely granting stays would undermine the AEDPA's goals of encouraging finality and streamlining federal habeas proceedings." *Blake v. Baker*, 745 F.3d 977, 981–82 (9th Cir. 2014); *Rhines*, 544 U.S. at 277 ("Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.").

Under *Rhines*, the stay-and-abeyance procedure is appropriate only where the habeas petitioner has shown: (1) "good cause" for the failure to exhaust, (2) the unexhausted claim is "potentially meritorious," and (3) the petitioner did not "engage[ ] in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 277–78.

"The caselaw concerning what constitutes 'good cause' under *Rhines* has not been developed in great detail." *Dixon v. Baker*, 847 F.3d 714, 720 (9th Cir. 2017); *see Blake*, 745 F.3d at 980 ("There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust."). The Ninth Circuit has held that good cause under *Rhines* does not require a showing of "extraordinary circumstances." *Jackson v. Roe*, 425 F.3d 654, 661–62 (9th Cir. 2005). However, a petitioner must do more than simply assert that he was "under the impression" that his claim was exhausted. *Dixon*, 847 F.3d at 720 (citing *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008)). Ultimately, "good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify [the failure to exhaust]." *Blake*, 745 F.3d at 982 (citation and footnote omitted).

Some courts have drawn an analogy between "good cause" and the showing of cause required to overcome a procedural bar. *See e.g., Hernandez v. Sullivan*, 397 F.Supp.2d 1205, 1207 (C.D. Cal. 2005). Under the procedural default doctrine, "cause" is defined as an objective factor external to the petitioner which gave rise to the default. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). In contrast to that standard, the Supreme Court has

suggested that a petitioner's reasonable confusion about whether his unexhausted claims are time-barred in state court would be sufficient to establish good cause under *Rhines*. *Pace*, 544 U.S. at 416. A review of the cases shows that "most courts have concluded that the 'good cause' necessary for stay and abeyance is either the same as or more generous than the showing needed for 'cause' to excuse a procedural default." *Beets v. McDaniel*, No. 204-CV-00085-KJD-GWF, 2009 WL 212424, at *5 (D. Nev. Jan. 23, 2009); *see also Riner v. Crawford*, 415 F. Supp. 2d 1207, 1211 (E.D. Nev. 2006) (explaining that courts have required a showing that the petitioner was prevented from raising his claim in state court "either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control"). Under any standard along this spectrum, Hedlund does not establish good cause for his failure to exhaust his legislative-repeal claim.

Hedlund contends that good cause exists because the partial repeal of the pecuniary gain factor occurred years after his first PCR petition and his first petition for federal habeas relief, in 1999 and 2003, respectively. (Doc. 18 at 5–6.) Respondents counter that Hedlund's "basis for good cause is insufficient because it does not explain why he filed this legislative-repeal claim in his pending habeas petition before exhausting in state court." (Doc. 19 at 5.) They also note that Hedlund waited five months after filing his second-in-time habeas petition to file his successive PCR petition raising the legislative-repeal claim. (*Id.*)

Hedlund asserts that he filed his second-in-time habeas petition "as protection against the running of AEDPA's one-year statute of limitations from the Arizona Supreme Court's new independent review on December 10, 2018." (Doc. 20 at 3.) He argues that because the repeal of the pecuniary gain factor did not occur until August 27, 2019, there was no guarantee that he would have had time to litigate that claim in state court before the federal statute of limitations expired in December 2019. (*Id.*)

Hedlund's arguments do not establish good cause for waiting to file his state court claim until after filing his federal habeas petition. Courts in this district have found good

cause lacking when the petitioner filed a habeas petition before completing state court review. *Sanders v. Attorney Gen. of Arizona*, No. CV-19-05633-PHX-NVW (DMF), 2020 WL 3271483, at *5 (D. Ariz. May 28, 2020), *report and recommendation adopted*, No. CV-19-05633-PHX-NVW (DMF), 2020 WL 3268693 (D. Ariz. June 17, 2020)) ("Petitioner fails to offer good cause for his failure to exhaust his state remedies prior to filing in this case. The undersigned finds none. Rather, it appears that Petitioner simply jumped the gun by filing his federal petition prior to completing the normal state review."); *see also Wright v. Ryan*, No. CV-18-4057-PHX-NVW (JFM), 2019 WL 6498902, at *3 (D. Ariz. Nov. 7, 2019), *report and recommendation adopted*, No. CV-18-04057-PHX-NVW (JFM), 2019 WL 6492448 (D. Ariz. Dec. 3, 2019) (same).

Hedlund relies on *Cunningham v. Kelly*, 423 F.Supp.3d 1034 (D. Or. 2019). There, the district court held that the petitioner was entitled to a stay of his federal habeas petition in order to return to state court to exhaust an Eighth Amendment claim based on a new Oregon law narrowing the definition of aggravated murder and eliminating the future dangerousness penalty-phase question. *Id.* at 1037–38. *Cunningham* is inapposite because the court's analysis did not take place under the *Rhines* framework and therefore the petitioner was not required to establish good cause. *Id.* at 1037 (analyzing stay request under *Kelly v. Small*, 315 F.3d 1063 (2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007)).

*Cunningham* is also distinguishable on the facts. In *Cunningham*, the court held that a stay was justified because at least one of the petitioner's proposed new claims arose from the passage of the new statute, which was signed into law "mere weeks ago," and Respondents conceded that the petitioner "could not have raised the claim any earlier in state court." *Id.* at 1037–38. Here, by contrast, the change in law on which Hedlund's claim is premised went into effect nine months before he raised his challenge in state court. The factual and legal bases for the claim were available well before Hedlund filed his second-in-time habeas petition let alone his successive PCR petition.

Hedlund's case may also be contrasted with *Lugo v. Kirkland*, No. C 05-0580 JF, 2006 WL 449130, at *4 (N.D. Cal. Feb. 22, 2006). There, the court granted a stay under *Rhines* where the petitioner demonstrated "good cause" by showing that his new claims were discovered after the state appeal process had concluded and after the petitioner had filed his federal petition. Here, the grounds for Hedlund's new legislative-repeal claim existed before Hedlund filed his second habeas petition.

Another case supports the Court's conclusion that Hedlund has not demonstrated good cause. In *Little v. Sisto*, No. 08-CV-1043-JTM (PCL), 2009 WL 857613, at *6–7 (S.D. Cal. Jan. 29, 2009), *report and recommendation adopted as modified*, No. 08 CV 1043JMPCL, 2009 WL 857609 (S.D. Cal. Mar. 30, 2009), the court found that the petitioner failed to show good cause because he was not diligent in filing his claim in state court. The petitioner "knew that five of the eight claims set forth in his federal petition were unexhausted when he filed the petition in June of 2008." *Id.* "Moreover," despite demonstrating his intention to file a successive petition in state court in January of 2008, "he waited an additional 60 days to file a successive habeas petition in the California Supreme Court." *Id.* Hedlund showed a similar lack of diligence here, waiting five months after filing his federal habeas petition, which contained the legislative repeal claim, to file the same claim in state court.

Hedlund has not demonstrated good cause for his failure to exhaust the legislative-repeal claim. The failure was neither the result of an objective factor external to Hedlund, *Hernandez*, 397 F.Supp.2d at 1207, nor the result of reasonable confusion, *Pace*, 544 U.S. at 416. Because Hedlund cannot show good cause under *Rhines*, his request for a stay is denied.[7]

**IV. Conclusion**

For the reasons discussed above, the Court finds that Hedlund's second-in-time habeas petition is not an impermissible second or successive petition requiring authorization from the Ninth Circuit.

---

[7] Having found that Hedlund fails to establish good cause under *Rhines*, the Court does not address the merits of the claim or whether Hedlund was dilatory.

- 14 -

The Court further finds that Hedlund is not entitled to a stay under *Rhines* to exhaust his claim based on the partial repeal of the pecuniary gain aggravating factor.

Based on the foregoing,

**IT IS ORDERED** that Claim 1 of Hedlund's Petition for Writ of Habeas Corpus (Doc. 1) is **dismissed** as meritless.

**IT IS FURTHER ORDERED** that Claims 4 and 6 of Hedlund's Petition for Writ of Habeas Corpus (Doc. 1) are **dismissed** pursuant to 28 U.S.C. § 2244(b)(1).

**IT IS FURTHER ORDERED** that Claims 2, 3, 5, and 7 remain under advisement. Respondents shall file an answer to Hedlund's petition addressing these claims no later than **October 26, 2020**. Hedlund shall file his reply no later than **November 23, 2020**.

**IT IS FURTHER ORDERED** that Hedlund's Motion for Stay and Abeyance (Doc. 18) is **denied**.

Dated this 24th day of August, 2020.

Douglas L. Rayes
United States District Judge

- 15 -